# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

ELTON E. MCKINNON,

        Plaintiff,

vs.                                                     No.  CV 99-657 SC/WWD ACE

UNITED STATES OF AMERICA,

        Defendant.

## MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court on Defendant's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1), filed July 2, 1999 [Doc. No. 6], and Plaintiff's Motion to Strike or, in the Alternative, to Permit Surreply and Memorandum in Support of Motion, filed December 15, 1999 [Doc. No. 26].  The Court has read the motions and memoranda and is apprised of the applicable law.  For the reasons set forth below, the Court concludes that neither motion is well-taken.  The Court further concludes that (1) a portion of Defendant's motion to dismiss will be construed sua sponte as a motion for summary judgment and (2) a portion of McKinnon's Response in Opposition to the United States's [sic] Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1), filed November 12, 1999 [Doc. No. 22], will be construed sua sponte as an implied motion to dismiss and to remand for lack of subject matter jurisdiction.  For the reasons set forth below, the Court concludes that these construed motions also are not well-taken.

# I.     INTRODUCTION

This civil suit arises from injuries Plaintiff sustained following the self-injection of a drug prescribed by Dr. Kenneth Yamamoto at First Choice Community Healthcare (First Choice).  The action was originally filed in New Mexico state court against Dr. Yamamoto and First Choice, alleging violations of state law.  The United States removed the action to this court, substituted itself as Defendant, and certified that Dr. Yamamoto and First Choice were deemed to be federal employees for purposes of the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346(b), 2671, et seq., and the Public Health Service Act, 42 U.S.C. § 233(a) (as amended), for the alleged acts and omissions of Dr. Yamamoto.  The United States further certified that Dr. Yamamoto was acting within the scope of his employment with First Choice.  In its Notice of Removal and its Notice of Substitution,  the United States stated that Plaintiff's action must be deemed a tort action against the United States under the FTCA.  (The United States, thus, altered the forum, the defendant, and the substance of Plaintiff's suit.)  Prior to filing his state court action, Plaintiff filed an administrative claim with the United States Department of Health and Human Services, pursuant to the FTCA.

Defendant contends in its motion to dismiss that Plaintiff's sole remedy is under the FTCA.  Defendant further contends that the Court lacks subject matter jurisdiction over this case because Plaintiff has failed to exhaust his administrative remedies pursuant to 28 U.S.C. § 2675(a) and that his claims are otherwise time-barred under 28 U.S.C. § 2401(b).  Defendant, thus, is both invoking and challenging the subject matter

jurisdiction of this Court

Plaintiff responds (1) that Defendant has failed to establish that this action is covered by the FTCA; (2) in the alternative, that his FTCA administrative claim was timely filed and, if unripe, may still be timely filed; and (3) in the alternative, that the FTCA's statute of limitations should be equitably tolled. Plaintiff's first response will be treated <u>sua</u> <u>sponte</u> as an (implied) motion to dismiss and to remand for lack of subject matter jurisdiction under Rule 12(b)(1) and 28 U.S.C. § 1447(c). <u>See</u> <u>New Mexicans for Bill Richardson v. Gonzales</u>, 64 F.3d 1495, 1499 (10th Cir. 1995) (challenge to court's subject matter jurisdiction treated as motion under Rule 12(b)(1)).

Plaintiff contends in his motion to strike that the Court should strike evidentiary material submitted with Defendant's reply to Plaintiff's response to Defendant's motion to dismiss, and all argument based on such material. In the alternative, Plaintiff requests leave to file a surreply.

## II.    FTCA BACKGROUND

The FTCA is a statutory waiver of sovereign immunity by the United States. The FTCA is an exclusive remedy for torts committed by federal employees when those employees were acting within the scope of their employment. <u>See</u> 28 U.S.C. §§ 1346(b)(1), 2679; 42 U.S.C. § 233(a), (g)(1)(A). The FTCA provides that a tort claim against the United States must be presented in writing to the proper agency within two years of the claim's accrual. <u>See</u> 28 U.S.C. § 2401(b) (two-year statute of limitations). If the agency denies the claim, or if six months have passed since the claim was presented

and there has been no response by the agency, the injured party may file suit in federal district court.  See id. § 2675(a) (six-month administrative remedies requirement).  If an action in which the United States has been substituted as the party defendant is dismissed for failure to first present a claim under 28 U.S.C. § 2675(a), the claim shall be deemed timely filed under 28 U.S.C.§ 2401(b) if "the claim would have been timely had it been filed on the date the underlying civil action was commenced" and the claim is presented to the appropriate agency within sixty days of dismissal of the civil action.  28 U.S.C. § 2679(d)(5).

 If the United States is not the named defendant in the action, but instead a federal employee is named, and the Attorney General certifies that the employee was acting within the scope of her employment, the United States must be substituted as the party defendant in the action.  See id. §§ 2679(c), (d)(1); 42 U.S.C. § 233(l).  Additionally, if the action is filed in state court, and trial has not yet commenced, the action must be removed to federal district court.  See 28 U.S.C. § 2679(d)(2); 42 U.S.C. § 233(c).

## III.    MOTION TO STRIKE

In his motion to strike, Plaintiff requests that the evidentiary materials submitted with Defendant's reply to its motion to dismiss, along with all arguments based on such material, be stricken or, in the alternative, that he be granted leave to file a surreply. Plaintiff's motion to strike is not well-taken.

First, as discussed below, Defendant was not prohibited under the circumstances of this case from attaching extrinsic material to its motion to dismiss for lack of subject

matter jurisdiction.  Second, the extrinsic materials Defendant attached to its reply did not

constitute new evidence or argument.  Rather, these materials were in answer to new

arguments raised by Plaintiff in his response and supported Defendant's reply, not its

motion.  Third, Plaintiff's request to strike the Martin J. Bree Declaration is moot, as I did

not consider the Declaration in ruling on the motion to dismiss.[1]   Finally, a surreply

would not further the Court's understanding of the issues presented in Defendant's

motion to dismiss or Plaintiff's response.  Therefore, Plaintiff's motion to strike will be

denied.

## IV.    RULE 12(B)(1) MOTIONS TO DISMISS

### A.    Standard of Review

Federal courts are courts of limited jurisdiction.  See Castaneda v. INS, 23 F.3d

1576, 1580 (10th Cir. 1994).  If it becomes apparent to a court that it lacks jurisdiction, it

must dismiss the action without rendering judgment.  See Basso v. Utah Power & Light

Co., 495 F.2d 906, 909 (10th Cir. 1974).  The party seeking to invoke federal jurisdiction

carries the burden of establishing that such jurisdiction is proper.  See Sac & Fox Nation

v. Cuomo, 193 F.3d 1162, 1165 (10th Cir. 1999).

Generally, one of three review standards apply to a court's consideration of a Rule

12(b)(1) motion.  Which standard applies depends on whether the jurisdictional challenge

is facial, factual, or intertwined.  See United States v. Spectrum Emergency Care, Inc.,

---

[1] I did consider the three Attachments to the Bree Declaration (FTCA deeming letters from the Secretary of Health and Human Services to First Choice).

190 F.3d 1156, 1159-60 (10th Cir. 1999); <u>Holt v. United States</u>, 46 F.3d 1000, 1002 (10th Cir. 1995). If the Rule 12(b)(1) motion is a facial challenge to subject matter jurisdiction, questioning the sufficiency of the complaint, then the court must accept the complaint's allegations as true, as in a Rule 12(b)(6) attack. <u>See</u> <u>Holt</u>, 46 F.3d at 1002. If the motion is a factual attack, challenging the facts upon which subject matter jurisdiction depends, then a court may not presume the complaint's factual allegations, but must go beyond the factual allegations and consider the extrinsic evidence presented by the parties. <u>See</u> <u>Holt</u>, 46 F.3d at 1003; <u>Cheromiah v. United States</u>, 55 F.Supp.2d 1295, 1298 (D.N.M. 1999). In evaluating extraneous evidence, the court is not converting the Rule 12(b)(1) motion into one for summary judgment. <u>See</u> <u>Holt</u>, 46 F.3d at 1003; <u>Wheeler v. Hurdman</u>, 825 F.2d 257, 259 n.5 (10th Cir. 1987). However, when resolution of the jurisdictional question is intertwined with the merits of the case, a court must convert a Rule 12(b)(1) motion into a Rule 56 summary judgment motion. <u>See</u> <u>Spectrum</u>, 190 F.3d at 1159-60; <u>Holt</u>, 46 F.3d at 1003; <u>Wheeler</u>, 825 F.2d at 259. Jurisdictional issues generally are intertwined with merits of the case when the same statute controls both the action's subject matter jurisdiction and substantive claim(s). <u>See</u> <u>Holt</u>, 46 F.3d at 1003; <u>Wheeler</u>, 825 F.2d at 259; <u>Cheromiah</u>, 55 F.Supp.2d at 1298.

The applicable standard of review was not briefed by the parties. The procedural posture of this case makes it difficult to pigeon-hole Plaintiff's or Defendant's Rule 12(b)(1) motion as facial, factual, or intertwined challenges. Applying the principles of the Rule 12(b)(1) standard of review jurisprudence and noting the need for clarification of

this area of law, I conclude the following: (1) Plaintiff's implied motion is a factual challenge; (2) Defendant's exhaustion of remedies attack is a factual challenge; and (3) Defendant's statute of limitations attack is an intertwined challenge. As to Defendant's two challenges, subject matter jurisdiction in this case is dependent on the same statute which Defendant alleges provides the substantive claim in this case (i.e., the FTCA). Thus, technically both of Defendant's challenges should be considered as intertwined ones. However, only Defendant's statute of limitations attack is truly intertwined with the merits of the case – i.e., when Plaintiff's claim accrued, if at all, is both a jurisdictional and a substantive issue. See Augustine v. United States, 704 F.2d 1074, 1078-79 (9th Cir. 1983) (jurisdictional issue dependant upon resolution of factual issues going to the merits in FTCA medical malpractice case). Therefore, pursuant to Holt and Wheeler, (1) I will apply a summary judgment standard to Plaintiff's implied motion and to Defendant's motion on the exhaustion of remedies ground, and (2) I will, sua sponte, convert Defendant's motion on the statute of limitations ground into a motion for summary judgment.

Pursuant to a summary judgment standard of review, the truthfulness of the factual allegations will not be presumed and I will consider extrinsic evidence in reaching my conclusions. The motions will be granted only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law. See Fed. R. Civ. P. 56(c); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 249, 251-52, 255 (1986). The facts will be construed in the light most favorable to the nonmovant, see

Magnum Foods, Inc. v. Continental Casualty Co., 36 F.3d 1491, 1497 (10th Cir. 1994), and all doubts will be resolved in favor of the existence of triable issues, see World of Sleep, Inc. v. La-Z-Boy Chair Co., 756 F.2d 1467, 1474 (10th Cir. 1985).[2]

---

[2] The Tenth Circuit has concluded that notice to the parties of a court's intent to convert a Rule 12(b)(1) motion into a summary judgment motion is not required. See Wheeler v. Hurdman, 825 F.2d 257, 259-60 (10th Cir. 1987). Although the procedural facts in Hurdman were not identical to the facts at bar, I conclude that no "unfair surprise" would result from not providing notice here. Defendant submitted material beyond the pleadings. Plaintiff argued that Defendant's supplementation converted its Rule 12(b)(1) motion into a Rule 56 summary judgment motion. Plaintiff further provided in his response detailed statements of material fact (the facts). Defendant, although contending that its motion was not a Rule 56 motion and that only legal issues were before the Court, listed in its reply the facts which it specifically did not admit. Additionally, counsels' presumed knowledge of the standards of review applicable to Rule 12(b)(1) motions should have alerted the parties to the possibility that Defendant's motion could be converted from a motion to dismiss to a motion for summary judgment.

**B.      Factual Background**

All discovery, except for discovery in connection with Defendant's Rule 12(b)(1) motion to dismiss, has been stayed. Consequently, with the exception of the FTCA deeming of First Choice and Dr. Yamamoto, the facts alleged, admitted, and disputed by the parties may differ once all discovery has been completed.

Defendant contends that First Choice received a federal § 330 Community Health Center grant from the Department of Health and Human Services for the budget period of January 1996 through December 1996. (This grant was a continuous annual award.) Defendant further alleges that First Choice and its employees have been deemed to be employees of the federal government for purposes of 42 U.S.C. § 233, and thus covered by the FTCA, as shown by letters dated October 18, 1993, January 22, 1996, and June 20, 1996, from the Bureau of Primary Health Care of the Department of Health and Human Services. Plaintiff disputes that First Choice and Dr. Yamamoto are covered by the FTCA.

Plaintiff alleges as follows. (Defendant disputes these alleged facts, except where specifically indicated.) He suffered from mild erectile dysfunction, for which he sought treatment from Dr. Kenneth Yamamoto, who is not an urologist, at First Choice. On April 8, 1996, Dr. Yamamoto prescribed Plaintiff a drug, Papaverine HCL, to inject prior to sexual intercourse. (Defendant does not dispute that Dr. Yamamoto prescribed the Papaverine.) Dr. Yamamoto did not give Plaintiff any directions, training, or warning with respect to the use of the drug. Dr. Yamamoto did not caution Plaintiff regarding

side-effects of the drug, including priapism,[3] and the possibility of losing other treatments should priapism occur, nor did he instruct Plaintiff on what he should do if priapism should occur.  Dr. Yamamoto did not test inject Plaintiff with the drug in his office to determine the correct dosage or to observe any side-effects.

Plaintiff first used the drug on November 16, 1996, while he was out of state. After engaging in sexual intercourse on November 16, Plaintiff's erection did not subside. On his return to New Mexico on November 19, Plaintiff consulted with Dr. Yamamoto about his problem.  (Defendant does not dispute this consultation occurred.)  On November 20, 1996, Dr. Yamamoto referred Plaintiff for emergency treatment, at which time Plaintiff learned he had blood clots in his penis that would require surgical removal. On July 25, 1997, Dr. Todd Gray informed Plaintiff that he had suffered permanent damage, that he would never be able to maintain an erection again, and that there was no effective treatment to correct the problem.  Additionally, on July 25, 1997, Plaintiff learned for the first time that his injuries were caused not just by the drug, but also by the actions and omissions of Dr. Yamamoto.  Prior to this date, Plaintiff had been given to understand that the blood clots that caused his injuries were themselves caused solely by an adverse reaction to the drug.

Plaintiff further alleges as follows.  (Defendant does not dispute these allegations, except where specifically noted.)  After his conversation with Dr. Gray on July 25, 1997,

---

[3] Priapism is an abnormal, persistent, painful erection of the penis.

Plaintiff hired legal counsel. After some investigation in September 1997, including an inquiry to the State Corporation Commission, Plaintiff's counsel concluded that Dr. Yamamoto and First Choice were covered by the New Mexico Medical Malpractice Act during the relevant time of Plaintiff's cause of action. On December 3, 1997, Plaintiff filed a medical malpractice claim with the New Mexico Medical Review Commission (Commission) against Dr. Yamamoto and First Choice under the New Mexico Tort Claims Act. The Commission reported its decision on March 17, 1998.

From March 1998 to December 1998 Plaintiff engaged in settlement negotiations with Dr. Yamamoto and First Choice through their counsel, Mr. E.W. Shepard (Shepard). On March 17, 1998, Plaintiff's counsel received a telephonic request from Shepard that his clients, First Choice and Dr. Yamamoto, be given an opportunity to settle the matter before litigation was begun. (Defendant disputes this fact.) Plaintiff promptly responded with an offer on March 24, 1998. While repeatedly indicating a desire to submit a counteroffer and to negotiate a settlement, Shepard repeatedly and consistently put the matter off, explaining that Plaintiff did not have to file suit until 1999, that his client needed to review the case, and that he had to locate a consultant. On June 25, 1998, Shepard informed Plaintiff's counsel that he expected a response within two weeks. On July 20, 1998, he informed that he had reported his findings to Dr. Yamamoto's carrier. Shepard informed Plaintiff's counsel on August 19, 1998, that Dr. Yamamoto had authorized a settlement, and on September 21, 1998, Shepard informed that the insurance carrier needed Dr. Yamamoto's written consent and requested patience while the

paperwork was resolved.  On October 12, 1998, Dr. Yamamoto and First Choice made a settlement offer, to which Plaintiff counter-offered on October 15, requiring a response within ten days.  On October 26, Shepard informed that a response within the requested period would not be forthcoming because a review meeting could not be held until November.  Shepard also indicated that there was a possibility that a second insurance carrier was involved and that negotiations might be delayed while this carrier was notified and given an opportunity to respond.  On November 24, Shepard informed that his client felt that this was a case it should seriously try to settle without litigation  Shepard, however, also stated that while his client did insure Dr. Yamamoto and First Choice in April 1996, it did not insure them in November 1996.  The "other" insurance carrier was not identified by Shepard on October 26 or on November 24, nor does it appear that Plaintiff's counsel inquired as to its identity.

The remaining facts are uncontested by the parties.  On December 3, 1998, Plaintiff was informed by the Public Health Service that Dr. Yamamoto and First Choice were insured by the federal government under the FTCA and that an administrative claim must be filed.  (It was at this time that Plaintiff's counsel also learned that the insurance coverage of Dr. Yamamoto and First Choice under the New Mexico Medical Malpractice Act was terminated in June 1996.)  Plaintiff, through his counsel, filed a FTCA administrative claim form on December 8, 1998.

On March 3, 1999, Plaintiff filed a Complaint for Medical Malpractice in the Thirteenth Judicial District Court, County of Valencia, State of New Mexico, against Dr.

Yamamoto and First Choice for (1) failure to refer to qualified healthcare provider; (2) failure to warn of inherent and potential hazard of the proposed treatment; (3) failure to inform and acquire informed consent; and (4) failure to follow proper medical procedures, to determine candidacy for Papaverine use, to determine dosage, and to train in auto-injection. Dr. Yamamoto and First Choice filed an Answer on April 26, 1999. No mention was made of the FTCA in either the Complaint or the Answer.

On June 14, 1999, under 42 U.S.C. § 233(c), Defendant filed a Notice of Removal, attaching a Certification that Dr. Yamamoto was acting within the scope of employment with First Choice and is deemed to be a Public Health Service employee covered by the FTCA. Defendant also filed on June 14 a Notice of Substitution of the United States as defendant for Dr. Yamamoto and First Choice, pursuant to 42 U.S.C. § 233(c) and 28 U.S.C. § 1346(b).

## C.     Plaintiff's Implied Motion to Dismiss and Remand

In responding to Defendant's contention that his cause of action must be dismissed for lack of subject matter jurisdiction, Plaintiff argues that his action was improperly removed and should be remanded to state court because Defendant has failed to demonstrate that the FTCA governs this case.[4] Plaintiff specifically contends that

---

[4] Defendant's motion to dismiss assumes that the post-removal applicability of the FTCA to this action is uncontested. Plaintiff's jurisdictional arguments and request for remand should have been directed at Defendant's Notice of Removal, Notice of Substitution, and Certification filed in June 1999 and should have been brought to my attention in a separate motion. However, because Plaintiff's arguments implicitly challenge my subject matter jurisdiction, and subject matter jurisdiction questions may be raised at any time, I address Plaintiff's contentions. See Fed. R. Civ. P. 12(h)(3); 28 U.S.C. § 1447(c); see also 42 U.S.C. § 233(c) (If a court determines on a motion to remand that a remedy under the FTCA is not

Defendant has failed to show (1) that the Secretary of the Department of Health and Human Services deemed Dr. Yamamoto and First Choice to be Public Health Service employees during the relevant time period or (2) that Plaintiff's medical treatment was related to the federal grant-supported activity of First Choice, as required by 42 C.F.R. § 6.6(d)[5]. Plaintiff is not challenging the U.S. Attorney's Certification that the acts or omissions at issue occurred within the scope of Dr. Yamamoto's employment with First Choice.

Plaintiff's contentions are without merit. Defendant has satisfied its initial burden of establishing that the federal jurisdiction it seeks exists. The Attorney General's Certification is <u>prima</u> <u>facie</u> evidence that Dr. Yamamoto and First Choice have been deemed by the Secretary of Health and Human Services to be Public Health Service employees covered by the FTCA for the acts and omissions at issue in this case. Additionally, as explained below, Defendant has satisfied its burden as the non-moving party under a summary judgment standard of review.

As to Plaintiff's first argument, in reply to Plaintiff's attack on this Court's subject matter jurisdiction Defendant attached as exhibits the Secretary's letters to First Choice stating that First Choice and, implicitly, Dr. Yamamoto were deemed covered by the FTCA during the relevant time period. Plaintiff has not presented any evidence to show

available against the United States, it generally must remand the action to state court.).

[5] "Only acts and omissions related to the grant-supported activity of entities are covered. Acts and omissions related to services provided to individuals who are not patients of a covered entity will be covered only if the Secretary determines" certain factors. 42 C.F.R. § 6.6(d).

that this is not true or that genuine issues of material fact exist on this point. Moreover, the Secretary's determination that an entity (or employee of an entity) is deemed to be a Public Health Service employee for FTCA purposes "is final and binding upon the Secretary and the Attorney General and other parties" to any action. See 42 U.S.C. § 233(g)(1)(F).

As to Plaintiff's second challenge, it is undisputed that First Choice received a federal grant pursuant to § 330 of the Public Health Service Act (a community health center grant) during the time period at issue here. See Pl.'s Resp. to Def.'s Mot. to Dismiss, Pl.'s Ex. 4 (Notice of § 330 Grant Award). Sections of the Public Health Service Act have been codified and amended at 42 U.S.C. §§ 233, 254, 256. Under the current version of 42 U.S.C. §§ 233(g)(1)(A), (4), for an entity and its employees to be deemed covered by the FTCA, the entity must be a public or nonprofit entity receiving federal funds under 42 U.S.C. § 254b.[6] It is not immediately evident whether § 330 grants (relating to grants for community health centers) fall within the current § 254b. However, 42 C.F.R. § 6.3 provides that entities eligible for FTCA coverage include those public or nonprofit entities receiving federal funds under a § 330 grant program. See 42

_____

[6] Prior to October 1996, the entity must have received federal funds under § 254b (relating to grants for migrant health centers), § 254c (relating to grants of community health centers), § 256 (relating to grants for health services for the homeless), or § 256a (relating to grants for health services for public housing residents). See 42 U.S.C. § 233, Historical and Statutory Notes, 1996 Amendments. Section 254b and 254c appear to have been reformulated with the October 1996 amendments. Section 254b, among other topics, now covers planning and operating grants for health centers which serve medically under-served populations, infant mortality grants, and grants relating to migrant workers, the homeless, and residents of public housing. See §§ 254b(c), (e)-(i).

C.F.R. § 6.3; see also Def.'s Addendum to Def.'s Reply to Pl.'s Resp. to Def.'s Mot. to

Dismiss, Def.'s Ex. C, Attach. 1 at 1 (Department of Health and Human Services 1993

"deeming" letter). First Choice is such an entity. Furthermore, Plaintiff's treatment need

not have been directly supported by federal grant money for the FTCA to apply. It is

sufficient that First Choice received federal grant money under § 330 and that Plaintiff

was a patient of First Choice. See 42 U.S.C. § 233(g)(1)(B) (deeming of an entity or

employee to be a Public Health Service employee for FTCA purposes shall apply with

respect to services provided "to all patients of the entity"). Therefore, because Defendant

has demonstrated by a preponderance of the evidence, see United States v. Spectrum

Emergency Care, Inc., 190 F.3d 1156, 1160 n.5 (10th Cir. 1999), and as a matter of law

that the FTCA applies to this action, Plaintiff's implied motion to dismiss and to remand

for lack of subject matter jurisdiction will be denied.

**D.     Defendant's Motion to Dismiss**

Defendant contends that Plaintiff's cause of action is both unripe and stale under

the FTCA. I will analyze each contention in turn.

　　　1.     Six-Month Exhaustion of Administrative Remedies Requirement

Section 2675(a) of Title 28 provides that no action against the federal government

for money damages for personal injury caused by the acts or omissions of any

government employee while acting within the scope of her employment may be instituted

unless the claimant has first presented the claim to the appropriate federal agency, and (1)

the agency has finally denied the claim in writing or (2) six months have passed since the

16

filing of the claim and the agency has made no final disposition of the claim. <u>See</u> 28 U.S.C. § 2675(a). Defendant contends that I lack subject matter jurisdiction over this action because Plaintiff has failed to exhaust his administrative remedies – while Plaintiff did file a FTCA claim, only three months had passed before he filed his state law action in state court, and thus he did not give the agency its six- month statutorily allowed time to respond to his claim. Plaintiff responds that if this action is unripe, and is dismissed, he need only refile the action for it to be ripe, as at this date more than six months has passed since he filed his FTCA claim and the claim has not been denied.

It is arguable that pursuant to the six-month administrative exhaustion requirement under 28 U.S.C. § 2675(a) Plaintiff's cause of action is unripe. The caselaw is clear that,"[a]s a jurisdictional prerequisite, the FTCA bars claimants from bringing suit in federal court until they have exhausted their administrative remedies." <u>Duplan v. Harper</u>, 188 F.3d 1195, 1199 (10th Cir. 1999) (citing <u>McNeil v. United States</u>, 508 U.S. 106, 113 (1993) and 28 U.S.C. § 2675(a)). Furthermore, because Plaintiff filed a FTCA claim before filing his state court lawsuit, the statutory exception to the administrative exhaustion requirement does not apply to this case. <u>See</u> 28 U.S.C. § 2679(d)(5). Therefore, it would seem that I must dismiss Plaintiff's cause of action because I lack subject matter jurisdiction over his claim.

I conclude, however, that not only is such a dismissal not required by precedent or statute, but that it would not serve judicial economy or the congressional purposes behind the administrative exhaustion requirement. The Supreme Court's holding in <u>McNeil</u>

while clear (as is the statutory language on which it is based) is also narrow – it only concerns those cases in which the plaintiff has filed directly a FTCA cause of action in federal court without first exhausting her administrative remedies (by either not filing a FTCA claim first or by not waiting for a denial or the six-month clock to run before filing the federal action). See McNeil, 508 U.S. at 107, 110-11, 113. This is not such a case, and McNeil is, thus, inapplicable.

While I agree generally that a plaintiff should not be able to end-run the FTCA by filing a FTCA claim and then suing the wrong defendant in the wrong forum for the wrong claim, the judicial burden would be increased, not lessened by, dismissing this case at this time – in contravention of the "congressional purposes of the claim presentment procedures." Bradley v. United States, 951 F.2d 268, 271 n.3 (10th Cir. 1991) (congressional purposes are "to ease court congestion and avoid unnecessary litigation, while making it possible for the Government to expedite the fair settlement of tort claims against" it (internal quotations omitted)). Moreover, during the period between when Plaintiff filed his administrative claim and when his lawsuit became a federal FTCA action, the government had both notice of the claim and the statutorily allowed period to investigate and attempt to settle the claim – removal of this case occurred six months after the administrative claim was filed (and three months after the action was filed in state court ). Therefore, I conclude that, under the facts of this case, the time of removal is the point at which jurisdiction under § 2675(a) should be determined. See Staple v. United States, 740 F.2d 766, 768 (9th Cir. 1984). I further

conclude that because this case was removed to federal court and converted into a FTCA action six months after Plaintiff filed his FTCA claim, with no agency denial of the claim during that time period, Plaintiff has exhausted his administrative remedies under § 2675(a). Defendant's motion to dismiss on this ground will be denied.

2.    Two-Year Statute of Limitations

Section 2401(b) of the FTCA mandates that a plaintiff file an administrative claim with appropriate federal agency "within two years after such claim accrues." 28 U.S.C. § 2401(b). Plaintiff submitted his administrative claim on December 9, 1998; thus, to be timely his claim must have accrued on or after December 9, 1996. Defendant asserts that Plaintiff's claim accrued on November 16, 1996, when Plaintiff administered the drug prescribed by Dr. Yamamoto, allegedly resulting in priapism requiring surgery three days later. Plaintiff contends that his claim accrued on July 27, 1997, when he learned that the cause of his injuries was not simply an adverse drug reaction, but were caused entirely or in part by the acts and omissions of Dr. Yamamoto. Plaintiff allegedly also learned the full extent of his injuries on July 27, 1997. Thus, his administrative claim was filed within the two-year statute of limitations. In the alternative, Plaintiff contends that if his cause of action is untimely, the statute of limitations should be tolled under the doctrine of equitable estoppel because the actions of First Choice, Dr. Yamamoto, and/or their counsel, Mr. Shepard, actively misled Plaintiff about the deemed status under the FTCA of First Choice and Dr. Yamamoto, the proper defendant to be named, the application of the FTCA to Plaintiff's cause of action, and the applicable statute of limitations.

19

A medical malpractice claim accrues when the plaintiff discovers, or in the exercise of reasonable diligence should have discovered, both the injury and its cause. See United States v. Kubrick, 444 U.S. 111, 122-23 (1979). "Accrual does not await the plaintiff's discovery that his injury resulted from malpractice or negligence. Rather, once a plaintiff is aware of the 'critical facts' underlying his injury and its cause, the limitations period begins to run." Gualtier v. United States, 837 F.Supp. 360 (D. Kan. 1993), aff'd, 25 F.3d 1057, 1994 WL 247034 (10th Cir. Jun 8, 1994). A plaintiff, however, is not required to distrust her physician's explanation of the non-iatrogenic (induced by a physician) cause of her medical misfortune nor fill herself with medical malpractice paranoia. Cf. Rosales v. United States, 824 F.2d 799, 804 (9th Cir. 1987) (plaintiff may reasonably rely on the assurances of her physician). "[T]he statute of limitations should not be construed to compel everyone who knows of any injury to scour his medical record just in case the government's physicians did something wrong . . . . [T]he statute starts to run when a reasonable person would know enough to prompt a deeper inquiry into a potential cause . . . ." Nemmers v. United States, 795 F.2d 628, 631-32 (7th Cir. 1986); see Heinrich v. Sweet, 44 F.Supp.2d 408, 416-17 (D.Mass. 1999). Additionally, [w]hen there are two causes of an injury, and only one is the government, the knowledge that is required to set the statute of limitations running is knowledge of the government cause, not just of the other cause." Drazan v. United States, 762 F.2d 56, 59 (7th Cir. 1985) see also Arvayo v. United States, 766 F.2d 1416, 1420 (10th Cir. 1985) ("cause" means more than mere awareness of medical cause in

cases involving failure to diagnose, treat, or warn); <u>Augustine v. United States</u>, 704 F.2d 1074, 1078 (9th Cir. 1983).

The parties dispute the date at which Plaintiff should have known of his injury (or injuries) and its cause (or their causes). The record in its current state does not end the dispute. For example, the record does not elucidate what was communicated to Plaintiff by Dr. Yamamoto at the time the Papaverine was prescribed; whether information about the drug and its side-effects, etc., were included with the drug by the drug company or by the pharmacy; what Dr. Yamamoto told Plaintiff about his priapism and blood clots and their cause (or effect). Furthermore, the cause (or causes) of Plaintiff's injury (or injuries) also is controverted. Summary judgment, thus, is precluded on the issue of claim accrual as there are genuine issues of material fact in dispute. These disputed facts go not only to the issue of this Court's jurisdiction, but also to the merits of Plaintiff's medical malpractice claim. Therefore, Defendant's converted motion for summary judgment will be denied. I need not reach Plaintiff's equitable tolling arguments at this time.

**NOW, THEREFORE, IT IS ORDERED** that Defendant's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1), filed July 2, 1999 [Doc. No. 6] is DENIED. Defendant's Motion to Dismiss, as to its two-year statute of limitations challenge, is <u>sua sponte</u> CONVERTED into a motion for summary judgment and DENIED.

**IT IS FURTHER ORDERED** that the <u>sua</u> <u>sponte</u> implied motion to dismiss and to remand for lack of subject matter jurisdiction by Plaintiff in McKinnon's Response in Opposition to the United States's [sic] Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1), filed November 12, 1999 [Doc. No. 22 ], is DENIED.

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Strike or, in the Alternative, to Permit Surreply and Memorandum in Support of Motion, filed December 15, 1999 [Doc. No. 26], is DENIED.

_____
SENIOR UNITED STATES DISTRICT JUDGE

Counsel for Plaintiff:  Charles G. Berry, BERRY & ASSOCIATES, Albuquerque, N.M.

Counsel for Defendant: Jan E. Mitchell, U.S. ATTORNEY'S OFFICE, Albuquerque, N.M.